# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ROY LEE DIX,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **5:12-cv-02436-AKK** |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Roy Lee Dix ("Dix") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Dix.

### I. Procedural History

Dix filed an application for Disability Insurance Benefits on March 6, 2009, alleging a disability onset date of June 1, 2008 due to blindness in his right eye,

back problems, shoulder problems, and "nerves." (R. 94, 133, 181). After the SSA denied Dix's application, he requested a hearing before an ALJ. (R. 60, 69, 77). The ALJ subsequently denied Dix's claims, (R. 9-29), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-6). Dix then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1; *see also* doc. 9.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*,

703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

In properly applying the five step analysis, the ALJ first determined that Dix has not engaged in substantial gainful activity since June 1, 2008, and therefore met Step One. (R. 14). The ALJ also acknowledged that Dix's neuropathy, status post right shoulder surgery, early lumbar spondylosis with ddd predominating at L3-4, early osteoarthritis of L5-S1 facets, history of blindness of the right eye since age 6 or 7, anxiety disorder, personality disorder, depressive disorder, reading disorder, disorder of written expression, and borderline intellectual functioning were severe impairments that met Step Two.  *Id*.  The ALJ proceeded to the next step and found that Dix failed to meet or equal one of the listed

impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy Step Three. *Id*. at 15. Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Dix

> has the residual functional capacity to occasionally lift and/or carry including upward pulling of 20 pounds and frequently up to 10 pounds; sit for six hours out of an eight-hour workday with normal breaks and he should sit no more than 30 minutes at a time without the ability to stand and shift position; stand and walk for four hours out of an eight-hour work day but no longer than 15 minutes at a time without the ability to sit; he is limited to occasional postural maneuvers such as balancing, stooping, and crouching; he can occasionally climb ramps and stairs but should never work on ladders, ropes or scaffolds or at unprotected heights; he has no limitation of the upper extremities for fine fingering and gross handling; he can understand and remember simple instructions but not detailed or complex; he can concentrate for two-hour periods across an eight-hour workday with normal breaks; he should have a low stress job defined as SVP-2 or less involving only simple work related decisions; he should work for an hourly wage as opposed to piece work; and any changes in the workplace should be infrequent and well explained.

*Id*. at 14-15. With respect to the pain standard, the ALJ found that Dix's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Dix's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id*. at 17. Based on this RFC assessment, the ALJ found that Dix is unable to perform any past relevant

work. *Id*. at 24.  Finally, at Step Five, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Dix] can perform[,]" and, thus, that Dix is not disabled. *Id*.; *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Dix contends that the ALJ erred by (1) failing to properly consider Dix's potential absenteeism, and (2) failing to consider the negative impact Dix's emotional/psychological problems would have on his ability to perform work. Doc. 9.  For the reasons stated more fully below, the court finds that the ALJ's decision is supported by substantial evidence.

### A.  Consideration of Absenteeism

Dix's first contention of error is based on the ALJ's alleged failure to include absenteeism in a hypothetical posed to the vocational expert or to mention absenteeism in the RFC assessment.  Doc. 9 at 5-12.  The court addresses each contention in turn.

#### 1.  Hypotheticals Posed to the Vocational Expert

When a vocational expert testifies at a claimant's hearing before an ALJ, he or she is ordinarily asked questions regarding whether the claimant can perform past relevant work or other jobs in the national economy.  In these circumstances, the vocational expert's responses are based on hypothetical questions about the

claimant's established impairments and abilities.  For an ALJ to use a vocational expert's testimony as substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

At the hearing, the ALJ asked the vocational expert whether a hypothetical individual with Dix's limitations would be able to perform any work in the national economy.  (R.51-52).  The ALJ then inquired whether the vocational expert's opinion would change "if . . . the hypothetical individual would miss one day a month[.]" *Id*. at 53.  Dix's counsel subsequently asked the vocational expert whether it would be acceptable for an individual to "consistently miss one to two days per month" in "unskilled, entry-level work at the light and sedentary level." The ALJ responded that "[o]ne day a month is up against the threshold of being excessive but i[s] still generally acceptable for unskilled employment" while "missing more than one day a month consistently . . . [is] excessive to maintain any type of work." *Id*. at 53-54.  Despite the follow up question by his counsel, Dix asserts that the ALJ's hypothetical was insufficient because it did not specifically address *excessive* absenteeism, i.e. more than one day per month. Doc. 9 at 9.  The court disagrees.

The record contains only one opinion regarding Dix's potential

absenteeism, that of state agency psychiatrist Dr. Robert Estock.[2] (R. 301-318).
Dr. Estock opined that Dix "would be expected to miss 1-2 days of work per month due to anxiety, and personality disorder." *Id*. at 317. The ALJ gave weight to other parts of Dr. Estock's report, but discredited this statement regarding absenteeism because Dr. Estock "does not explain what symptoms he bases this on and the evidence of record is inconsistent with evidence to support this opinion." *Id*. at 20. Under 20 C.F.R. § 404.1527, the ALJ properly discredited this portion of the report because Dr. Estock failed to adequately explain his finding and inconsistency with the medical evidence.[3] Indeed, the only other two medical reports regarding Dix's mental disorders are those of Dr. Storjohann and Dr. Mary Arnold, Psy. D., who both failed to discuss potential absenteeism or indicate that Dix's symptoms were severe enough to warrant missing more than one day of

---

[2] Dix contends that Dr. Robert Storjohann, Ph.D.'s opinion is also relevant to the absenteeism issue. However, Dr. Storjohann's report indicates only that he estimates Dix will be unable to complete a regular workday 20 days of each month. (R. 252). As conceded by Dix, "Dr. Storjohann does not seem to be stating that the plaintiff would miss entirely 20 days per month[] but that the plaintiff would be unable to complete a normal work day without interruptions from psychologically based symptoms for at least 20 days per month." Doc. 9 at 6. Therefore, Dr. Storjohann's opinion is not indicative of Dix's potential absenteeism.

[3] A state agency medical or psychological consultant's report is considered opinion evidence and the ALJ "evaluates the findings using the relevant factors in paragraphs (a) through (d) of this section, such as . . . the supporting evidence in the case record [and] supporting explanations the medical or psychological consultant provides[.]" 20 C.F.R. § 404.1527(e)(2)(ii). Discrediting such opinion evidence is proper so long as the ALJ "explain[s] in the decision the weight given[.]" *Id*.

work per month. *See* (R. 245-252, 291-94). Accordingly, the court finds that the ALJ's decision regarding assignment of weight to Dr. Estock's opinion is supported by substantial evidence and that there was no need to pose a hypothetical to the vocational expert containing an additional impairment of *excessive* absenteeism.

    2.    RFC Assessments

Dix contends also that the ALJ's disability determination is not supported by substantial evidence because the ALJ "does not mention absenteeism in his residual functional capacity assessment[.]" Doc. 9 at 9. While an established limitation should be included in an RFC assessment, Dix failed to establish excessive absenteeism as an existing impairment. As discussed above, the examining and non-examining physicians who performed psychological evaluations of Dix either failed to indicate that Dix would miss more than one day of work per month due to his disorders or did not support their opinion regarding absenteeism. Moreover, the remaining medical evidence pertaining to Dix's physical impairments likewise fails to indicate that Dix will miss more than one day of work per month. *See generally* (R. 237-370). Accordingly, the ALJ did not err in failing to include excessive absenteeism in his RFC assessment.

B.   **Consideration of Emotional Complications**

Dix contends next that the ALJ erred by failing to find Dix disabled based on the vocational expert's testimony regarding Dix's emotional complications. Doc. 9 at 14. More specifically, Dix asserts that, according to the vocational expert, "if you cannot get along with co-workers and supervisors" or have a more than moderate concentration impairment you are essentially disabled, and that Dr. Storjohann's report supports a finding of disability based on this standard. *Id*. at 14-15, citing (R. 56-57). Dr. Storjohann found that Dix "appears to have marked deficits in his ability to respond appropriately to supervision, coworkers, and work pressures in a work setting" and that Dix "displayed low average skills in his working memory and attention." (R. 248-249). This does not, however, indicate a complete inability to get along with co-workers and supervisors or a more than marked impairment in concentration, and the ALJ specifically included these impairments in his RFC assessment.[4] Moreover, the other physician reports, which the ALJ also relied upon, regarding these impairments indicate that Dix has only a moderate limitation in his ability to maintain social functioning and concentration.

---

[4] Specifically the ALJ found that Dix "can understand and remember simple instructions but not detailed or complex; he can concentrate for two-hour periods across an eight-hour workday with normal breaks; he should have a low stress job defined as SVP-2 or less involving only simple work related decisions; he should work for an hourly wage as opposed to piece work; and any changes in the workplace should be infrequent and well explained." (R. 16)

(R. 311). Even assuming the vocational expert is correct that marked or extreme limitations in abilities to socialize or concentrate would warrant a finding of disability, Dix failed to establish his limitations to that degree. Accordingly, the ALJ's RFC assessment is supported by substantial evidence.[5]

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Dix is not disabled is supported by substantial evidence. Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 24th day of January, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[5] Additionally, irrespective of the vocational expert's testimony regarding what impairments would warrant a finding of disability, the final responsibility for determining a claimant's RFC rests only with the ALJ. *See* 20 C.F.R. §§ 404.1527(d)(2) and 404.1546.